842 So.2d 689 (2002)
AAA COOPER TRANSPORTATION
v.
Jerry Wayne PHILYAW.
2000643.
Court of Civil Appeals of Alabama.
March 15, 2002.
*690 Charles F. Carr and Joseph H. Driver of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellant.
William D. Melton, Evergreen; and Max Cassady, Evergreen, for appellee.
PITTMAN, Judge.
Jerry Wayne Philyaw (the "employee") sued AAA Cooper Transportation (the "employer") for workers' compensation benefits, alleging that he suffered a work-related injury in July 1998 and a second work-related injury in July 1999 and that those two injuries caused him to be permanently disabled. Following a trial, the trial court found that the employee was permanently totally disabled and awarded corresponding benefits and medical expenses.
The employer argues that the trial court erred by (1) admitting the testimony of the employee's vocational-rehabilitation expert witness; (2) finding that the employee's two injuries were work-related; (3) finding that the employee was permanently totally disabled; and (4) setting what it contends is an incorrect date on which the employee reached maximum medical improvement ("MMI").
This court will not reverse a judgment based on the factual findings of the trial court in a workers' compensation case if those findings are supported by "substantial evidence." § 25-5-81(e)(2), Ala.Code 1975. Substantial evidence is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The employer first argues that the trial court erred by admitting the testimony of the employee's vocational-rehabilitation expert witness, Dr. Nancy Crumpton. The employer argues that the admission of this evidence is governed by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and that the admission of this evidence does not comply with the "scientifically reliable" test established by the Supreme Court.
Our supreme court has been confronted several times[1] with whether to apply the requirements of Daubert in all civil cases The court refused each time. In Ex parte Diversey Corp., 742 So.2d 1250, 1253-54 (Ala.1999), the court would not consider Diversey Corporation's argument that the expert testimony at issue did not satisfy Daubert because Diversey did not move the trial court to strike the expert testimony offered by the plaintiff Cooper in opposition to Diversey's summary-judgment motion.
In Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala.2000), the court mentioned the Daubert holding in footnote 5, recognizing that the United States Supreme Court replaced the "general acceptance" test for the admissibility of expert testimony established by Frye v. United States, 293 F. 1013 (D.C.Cir.1923), with the scientifically reliable test requirements of Daubert. The court further stated that it would not address the issue because neither party had argued that issue on appeal. 774 So.2d at 516-17 n. 5. *691 In Courtaulds Fibers, Inc. v. Long, 779 So.2d 198 (Ala.2000), the court refused to address the Daubert issue because the issue was not raised by the parties at trial, but rather by an amicus curiae on appeal. 779 So.2d at 202 n. 1.
The most recent discussion of this issue by our supreme court is in Slay v. Keller Industries, Inc., 823 So.2d 623 (Ala.2001). The court affirmed a summary judgment entered for Keller Industries, a defendant in an AEMLD case. 823 So.2d at 626. The Slays, the plaintiffs, appealed and argued that they had presented material issues of fact by way of the testimony of an expert witness. 823 So.2d at 624-25. Keller Industries had filed a motion in limine to exclude the expert's testimony.[2] 823 So.2d at 624. The trial court entered a summary judgment for Keller Industries, but did not state whether it had granted the motion in limine and excluded the expert's testimony or whether it had denied the motion in limine, but concluded that the expert's testimony was not substantial evidence to oppose the summary-judgment motion. 823 So.2d at 626.
The court concluded that the expert's testimony did not satisfy either Frye or Daubert, and, therefore, that it was not substantial evidence to oppose the summary-judgment motion. 823 So.2d at 626. The court also stated that because the expert's testimony did not satisfy the requirements of Daubert, "adopting that standard would make no difference in the outcome of this case. We therefore decline to address this issue." 823 So.2d 623 at 625 n. 2.
In this case, the employer ably argued the Daubert issue in the trial court and in its appellate brief. The employer argues that Dr. Crumpton's testimony regarding the employee's loss of earning capacity is not "scientifically reliable" as required by Daubert and it argues, therefore, that her testimony should not have been admitted.
In its judgment, the trial court referred to Dr. Crumpton's testimony as "credible," "compelling," and "persuasive." The trial court also states in its judgment that, "even absent Dr. Crumpton's testimony, the Court still concludes that the [employee] is permanently and totally disabled as a result of both the July 1998 and the July 1999 on the job accidents." In essence, the trial court stated that had it relied on or not relied on Dr. Crumpton's testimony, it would have reached the same conclusionthat the employee is permanently totally disabled.
The trial court's judgment reflects the rule of law that in determining an employee's loss of earning capacity the trial court is not bound by expert testimony. Ex parte Kmart Corp., 812 So.2d 1205 (Ala.2001); and Ex parte Beaver Valley Corp., 477 So.2d 408 (Ala.1985). The trial court may base its loss-of-earning-capacity determination on its own observations of the employee during the trial. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ. App.1988). As will be discussed later in the opinion, substantial evidence, other than Dr. Crumpton's testimony, supports the trial court's finding that the employee is permanently totally disabled. Therefore, as the supreme court concluded in Slay v. Keller Indus., Inc., supra, we conclude that applying Daubert to Dr. Crumpton's testimony would not affect the outcome of the case; even if we concluded that Dr. Crumpton's testimony was inadmissible, other admissible evidence supports the trial court's finding of permanent total disability. Therefore, we will not apply the Daubert requirements in this case.
*692 The employer next argues that the trial court erred by finding that the employee's injuries were work related. The employer first argues that the employee did not prove legal causation. The employer specifically argues that the employee's 1999 injuries were the result of a physical altercation with his wife. The employee testified that the 1999 injuries were caused by his misstep from his tractor-trailer and the resulting fall to the ground, which severely injured his back. The employer presented evidence that the employee and his wife had been involved in a physical fight shortly after the time that the employee testified that he was injured leaving his tractor-trailer. The employer contends that the overwhelming evidence indicates that the employee's fight with his wife caused his injury. However, we conclude that the employee's testimony about how his accident occurred is substantial evidence of the legal causation of his accident.
The employer also argues that the employee did not prove medical causation. We disagree. The employee presented evidence from several doctors who testified that the employee's on-the-job accidents caused the employee to suffer injuries to his back, loss of bladder control, and loss of erectile function. Therefore, we conclude that the employee presented substantial evidence of medical causation.
The employer further argues that the trial court erred by finding the employee to be permanently totally disabled. The employee has a ninth-grade education and does not have a high-school diploma or a GED certificate. The employee has performed only manual labor. The trial court also emphasized the worker's back pain and loss of bladder function in its judgment finding that the employee is permanently totally disabled. As this court has stated, "The test for permanent total disability is the inability to perform one's trade or to obtain reasonably gainful employment. Total disability does not mean entire physical disability or absolute helplessness. Southern Prestressed Concrete, Inc. v. Thomas, 485 So.2d 772 (Ala.Civ. App.1986)." Genpak Corp. v. Gibson, 534 So.2d 312, 314 (Ala.Civ.App.1988). Therefore, we conclude that the trial court's finding that the employee is permanently totally disabled is supported by substantial evidence.
The employer also argues that the employee is not permanently totally disabled because, it argues, the employee is capable of being retrained via vocational rehabilitation. Given the extent of the employee's injuries, including loss of bladder control and continuous chronic pain, we conclude that the trial court did not err by not ordering the employee to undergo vocational rehabilitation. Furthermore, the record indicates that the employer did not request a vocational-rehabilitation plan before the trial.
The employer lastly argues that the trial court established an incorrect date as the date on which the employee reached MMI. Because we affirm the trial court's finding that the employee is permanently totally disabled, the correct date of the employee's MMI (the date that temporary total disability would end) does not affect the calculation of the employee's permanent total disability benefits. In effect, the employee's temporary total disability period never ends because the employee is permanently totally disabled. See § 25-5-57(a)(1) and (a)(4) (providing, respectively, the same rate of compensation for temporary total disability and permanent total disability).
*693 The trial court's judgment is due to be affirmed.
AFFIRMED.
THOMPSON, J., concurs.
YATES, P.J., concurs specially.
MURDOCK, J., concurs in the result.
CRAWLEY, J., dissents.
YATES, Presiding Judge, concurring specially.
I write to point out that it is my belief that Daubert would never be applicable to a workers' compensation case where the extent of disability is at issue. "It is the duty of the trial court to make some determination as to the extent of disability." Fryfogle v. Springhill Mem'l Hosp., Inc., 742 So.2d 1255, 1258 (Ala.Civ.App.1998). In making that determination, the trial court is not bound by expert testimony, even if that testimony is uncontroverted. Ex parte Kmart Corp., 812 So.2d 1205 (Ala.2001). Rather, the trial court may rely upon its own observations in making its determination. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988). Because a trial court is not bound to the testimony of experts and may consider its own observations in making a determination as to the extent of disability, I simply do not see where the application of Daubert would be relevant.
CRAWLEY, Judge, dissenting.
I dissent because I believe the admission of the testimony of the worker's vocational-rehabilitation expert witness was error. In Slay v. Keller Industries, Inc., 823 So.2d 623 (Ala.2001), our Supreme Court stated that it has not abandoned the "general acceptance" test stated in Frye v. United States, 293 F. 1013 (D.C.Cir.1923). In Slay, it described the "general acceptance" test:
"Under this standard, a person who offers an opinion as a scientific expert must prove that he relied on scientific principles, methods, or procedures that have gained general acceptance in the field in which the expert is testifying.
"Mere assertions of belief, without any supporting research, testing, or experiments, cannot qualify as proper expert scientific testimony under either the `general-acceptance' standard enunciated in Frye or the `scientifically reliable' standard of Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ].[[3]] Both general acceptance in the scientific community and a reliable basis in the knowledge and experience of a discipline are lacking...."
823 So.2d at 626.
During voir dire examination, the expert testified that for about 15 years she had performed evaluations to determine vocational disability; that there are significant differences of opinion among vocational experts as to the percent of disability; and that "there is not one method that takes into account every single aspect of vocational disability." On further questioning, the following occurred:
"Q. And it is a fair statement and you would agree that there are significant differences of opinion among vocational experts as to those figures of employability or disability?
"A. Yes, there are, often times.
". . . .
"Q. Can you explain to this Court why it would be on a fairly regular basis that vocational experts who testify in *694 court can differ by as much as 80 percent or more in the vocational disability of employees that they're testifying about?
"A. All I can tell you in some of the cases where I have testified I may have administered different tests to get different areas of information to help me with my decision; maybe another expert has used a different test instrument or has maybe not obtained that particular piece of information to put in the profile of that person. Sometimes a vocational expert may not take into consideration a pain factor and others may. I think those may be the two areas where there's the biggest difference.
". . . .
"Q. Is there ... any particular manual that vocational people can turn to to give some uniformity or predictability in reaching employability opinions?
"A. We don't have anything like that."
(Emphasis added.) Over the company's objection, the worker's expert testified that the worker "would not be able to be employed at a competitive level."
The foregoing testimony illustrates that the worker's expert was not relying on any principle, method, or procedure that had gained general acceptance in the scientific community in order to form her opinion of the extent of the worker's disability.
The majority concludes that admission of the vocational expert's testimony was harmless error because the remaining evidence supported the trial court's judgment. However, as our Supreme Court held in Liberty National Life Insurance Co. v. Harrison, 274 Ala. 43, 145 So.2d 219 (1962), the remaining evidence must be "without conflict."
"It has long been the rule that where a cause is tried by the court without a jury, the admission of illegal evidence raises the presumption of injury, and requires the reversal of the judgment unless the remaining evidence is without conflict and is sufficient to support the judgment. When this announcement was made, over a vigorous dissent, in First National Bank of Talladega v. Chaffin, [118 Ala. 246, 24 So. 80 (1898) ], it overruled many cases. The rule has been adhered to in later decisions.
"In view of another trial, we are not to be understood as commenting on the evidence or its effect other than to say that with [the rebuttal witness's] testimony excluded, the remaining evidence is in conflict. We cannot know how far the trial court was influenced in the finding of fact by the evidence erroneously admitted."
274 Ala. at 48, 145 So.2d at 223-24 (citations omitted). The remaining evidence as to plaintiff's permanent and total disability was in conflict.
In her special writing, Presiding Judge Yates states:
"In making [a disability] determination, the trial court is not bound by expert testimony, even if that testimony is uncontroverted. Ex parte Kmart Corp., 812 So.2d 1205 (Ala.2001). Rather, the trial court may rely upon its own observations in making its determination. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988)."
842 So.2d at 693 (Yates, P.J., concurring specially).
The issue in this case is not whether the evidence was sufficient to support the judgment, but whether the erroneous admission of the expert's testimony probably injuriously affected substantial rights of the company. Rule 45, Ala. R.App. P. The trial judge specifically found "the testimony of [the worker's expert] to be compelling *695 and persuasive.[[4]] However, even absent [the worker's expert] testimony, the Court still concludes that the [worker] is permanently and totally disabled as a result of both the July 1998 and the July 1999 on-the-job accidents."
I believe the trial court erroneously considered inadmissible evidence and that its error was not harmless. I would remand for a redetermination of the worker's disability.
NOTES
[1] Section 36-18-30, Ala.Code 1975, applies the requirements of Daubert for the admission of DNA evidence used for "identification purposes."
[2] The opinion does not state whether Keller Industries argued in its motion in limine that the expert's testimony did not satisfy the Daubert requirements.
[3] The Alabama Supreme Court has not adopted the Daubert standard in civil cases. Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala.2000).
[4] The trial court also found the testimony to be credible.